NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>LEONARD FELDER<br><br>    Defendant. | Criminal Action No. 19-343 (CCC)<br><br>**OPINION** |

**CECCHI**, District Judge.

Presently before the Court is defendant Leonard Felder's ("Felder") motion to suppress evidence allegedly obtained in violation of his constitutional rights and seeking additional relief, including requests for the Court to compel the Government to produce evidence under the Government's disclosure requirements and for leave to file additional pre-trial motions. ECF No. 10. The Government filed a brief in opposition. ECF No. 11. The parties also submitted additional briefing regarding supplemental authority. ECF Nos. 16 and 19. The Court has considered all of the submissions and exhibits before it. For the reasons expressed below, Felder's motion is hereby denied with respect to his request to suppress evidence and his request for early disclosure of materials, and is granted only to the extent he seeks leave, if necessary, to file additional pre-trial motions.

### I.     BACKGROUND

On or around March 30, 2019, Officers Reddick and Donker of the Newark Police Department were on patrol and observed a double-parked red Chevy sport-utility vehicle (the "Vehicle"). ECF No. 10-1 at 3. Officer Reddick ran a check of the Vehicle's license plate and discovered the vehicle's owner had an expired license. Id. The Vehicle was registered to Shanda

1

Jackson, later discovered to be Felder's girlfriend. Id. at 9. The officers turned on their overhead lights and sirens to initiate a traffic stop, then exited their patrol car and approached the Vehicle. Id. at 4. Officer Reddick approached the driver, later identified as Felder, and asked for his license, registration, and proof of insurance. Id. Felder provided Officer Reddick with his license and insurance card, but indicated he did not have the Vehicle's registration. Id. As Officer Reddick spoke with Felder, he observed two white square items wrapped in white paper in Felder's open left hoodie pocket, which Officer Reddick identified as two bricks[1] of heroin based on his experience. Id. Officer Reddick then asked Felder to exit the Vehicle, but Felder attempted to start the Vehicle instead. Id. Officer Reddick opened the door and grabbed Felder's arm in an attempt to remove Felder from the Vehicle. Id. Felder was, however, able to put the Vehicle into drive and carried Officer Reddick a short distance. Id.

While the Vehicle was in motion, Officer Reddick observed Felder take his right hand off of the steering wheel and drop something near the center console of the Vehicle. Id. Officer Reddick struck Felder and managed to halt the Vehicle. Id. After the Vehicle came to rest, a male in the front passenger seat fled from the Vehicle and Officer Donker gave chase. Id. Officer Reddick removed Felder from the Vehicle, took him to the ground, and placed him in handcuffs. Officer Donker was unable to locate the male passenger. Id. Officer Reddick searched Felder and recovered three bricks of heroin from his person. Id. Officer Reddick also checked the center console area and recovered a Taurus 9-millimiter handgun (the "Weapon"). A further search of the Vehicle revealed a shoe-box in the rear of the Vehicle containing a large quantity of

---

[1] "Brick" is a street term for fifty (50) glassine envelopes of heroin wrapped together in paper. ECF No. 10-1 at 4.

ammunition. Id. Detective Richiez then arrived at the scene to obtain a statement from Felder and advised Officer Reddick that the Vehicle would be towed pending a search warrant. Id.

## II. MOTION TO SUPPRESS

### A. Fourth Amendment Claims

Felder argues that the Court should suppress the Weapon and ammunition recovered from the Vehicle because Officer Reddick searched the Vehicle without a warrant. ECF No. 10-2 at 4. Although there are a number of well-known exceptions to the warrant requirement, Felder argues that they are not applicable in this case. First, Felder argues that the "plain view" exception does not apply because the Weapon was entirely concealed from view until Officer Reddick unlawfully entered the Vehicle, therefore "[a]ny observation came as a result of a warrantless search, not plain view observation. Id. at 5. Next, Felder argues that the automobile exception to the warrant requirement does not apply because Officer Reddick did not have probable cause to believe there was contraband in the Vehicle and because Felder was handcuffed and placed in a police vehicle when Officer Reddick searched the Vehicle illegally. Id. at 6–7. Finally, Felder argues that the Weapon and ammunition recovered from the Vehicle should be suppressed under the fruit of the poisonous tree doctrine as they were obtained as the fruit of an unlawful search. Id. at 7.

The Government responds that the Weapon and ammunition were lawfully seized. ECF No. 11 at 4. The Government notes that the initial encounter between Officer Reddick and Felder did not implicate the Fourth Amendment as law enforcement officers may approach individuals in public places, such as in a vehicle on the street, without any reasonable suspicion of wrongdoing. Id. at 3. Additionally, if the initial encounter is viewed as a motor vehicle stop governed by the Fourth Amendment, the Government maintains that Officer Reddick had probable cause to conduct such a stop for two independent reasons: (1) the Vehicle was double-parked illegally, and

3

(2) the registered owner of the Vehicle had an expired license. Id.  Next, the Government argues that it is well-settled that law enforcement officers may direct a driver to exit a vehicle during a traffic stop, and that Felder's attempt to drive away while dragging Officer Reddick constitutes an additional reason for Felder's arrest. Id. at 4.  The Government thus contends that Officer Reddick had probable cause to arrest Felder and search his person based on Felder's attempt to flee, leading to the seizure of the bricks of heroin in Felder's pocket. Id.  According to the Government, the discovery of the heroin bricks, as well as Officer Reddick's observation that Felder dropped something near the center console, then provided justification for Reddick to search the inside of the Vehicle as a valid search incident to the arrest. Id. at 4–5.  The Government further argues, under the circumstances, it was reasonable to believe additional contraband would be found in the center console, and that the automobile exception to the Fourth Amendment, which holds that there is a reduced expectation of privacy in a vehicle and allows officers to search a vehicle for additional contraband after initially discovering contraband, is applicable here. Id. at 6.

1. Legal Standard

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  To prevail on a motion to suppress, a defendant generally bears the burden of proving the challenged search or seizure was unreasonable under the Fourth Amendment. *See United States v. Acosta*, 965 F.2d 1248, 1257 n.5 (3d Cir. 1992) ("The proponent of a motion to suppress has the burden of establishing that his Fourth Amendment rights were violated.").  However, once the defendant has established a basis for his motion, *i.e.*, that the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995).  The

Government must demonstrate by a preponderance of the evidence that the challenged evidence is admissible. *See United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974).

2. Officer Reddick Lawfully Arrested Felder

We begin by examining whether Office Reddick's initial encounter with Felder violated Felder's rights. "It is well-established that police officers who lack reasonable suspicion may approach and question people seated in vehicles in public places." *United States v. Williams*, 413 F.3d 347, 353 (3d Cir. 2005). Felder does not challenge this proposition in his briefs, and thus there is no dispute that that Officer Reddick acted in accordance with the law when he approached Felder in the Vehicle which was double-parked on a public street. *See United States v. Hester*, 161 F. Supp. 3d 338, 344 (D.N.J. 2016) ("Where the police simply approach a parked, occupied vehicle and ask the occupant questions—much as they would approach a pedestrian—they need not have any preexisting reasonable suspicion or probable cause."). Additionally, however, Officer Reddick had a reasonable basis to stop Felder because the Vehicle was parked illegally. *See Hester*, 161 F. Supp. at 347 (D.N.J. 2016) (quoting *United States v. Delfin–Colina*, 464 F.3d 392, 397 (3d Cir. 2006) ("Police officers may perform investigatory traffic stops based on reasonable suspicion that 'an individual has violated the traffic laws.'"); *see also United States v. Richardson*, 504 F. App'x 176, 179 (3d Cir. 2012) (reasonable suspicion justified pulling over car with defective rear center brake light, an infraction punishable only by a fine); *United States v. Coleman*, 603 F.3d 496, 499 (8th Cir. 2010) ("[W]e agree with the district court that the stop was lawful because of the officer's observation of a traffic violation for double parking.").[2]

---

[2] Officer Reddick also indicated that a National Crime Information Center ("NCIC") check indicated that the owner of the Vehicle had an expired license and that provided additional justification for stopping the Vehicle. ECF No. 10-1 at 3. During the pendency of the present matter, the Supreme Court issued a decision in *Kansas v. Glover*, 140 S. Ct. 1183 (2020) which held that it was reasonable for a law enforcement officer to assume that the owner of a vehicle was

3. The Search of the Vehicle Was Incident to Felder's Lawful Arrest and Warranted Under the Automobile Exception

As Officer Reddick lawfully approached Felder in the Vehicle on a public street and as Officer Reddick had a reasonable basis to question Felder based on the fact that the Vehicle was parked illegally, there is a little question that the motion to suppress must be denied. The United States Supreme Court has clearly stated that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 343–44 (2009) (internal quotation marks and citation omitted). Here, Officer Reddick directed Felder to exit the Vehicle after observing heroin in Felder's pocket during his initial lawful questioning in a public place, meaning the arrest was based on possession of a controlled substance. ECF No. 10-1 at 4. Officer

---

the person driving, but noted that it may not be reasonable to make such a leap where the circumstances negate the assumption. *Id.* at 1191. The Government argues that the *Glover* decision does not alter the result in this matter as the Officers had independent bases to conduct a motor vehicle stop due to the parking violation and improperly tinted windows, and because they did not have any reason to believe the driver of the Vehicle was not its owner until they approached the Vehicle, and at this point Officer Reddick observed heroin in Felder's pocket. ECF No. 16 at 4 ("Most importantly, almost immediately upon approaching the driver's side of the vehicle, one of the officers observed bricks of heroin in the pocket of Felder's sweatshirt. In short, *Glover* justified the officers' initial approach, Felder's nervous and evasive behavior justified the officers' continue[d] investigation, and the officer's observation of packaging consistent with bricks of heroin justified his eventual seizure and arrest."). Defendant responds that *Glover* is dispositive in his favor because the reason he was stopped was a suspended license and it was clear that Felder, who is six feet tall and 330 pounds, was not the registered owner of the Vehicle, maintaining that "any other reason now asserted for the stop is pretextual." ECF No. 19 at 2; id. at 2 n.3. Despite the parties differing views of *Glover*, the Court holds that the decision does not alter the outcome of the present motion to suppress. In *Glover*, the Supreme Court "emphasize[d] the narrow scope of [its] holding" and instructed that a court must consider "the totality of the circumstances" when determining whether a seizure is supported by reasonable suspicion. *Glover*, 140 S. Ct. at 1191. Here, the totality of the circumstances, including the fact that the Vehicle was double-parked and had improperly tinted windows, in addition the NCIC check, provide reasonable suspicion for approaching the Vehicle. Additionally, while Officer Reddick became aware that Felder was not the owner of the Vehicle upon approach, he also viewed heroin in Felder's pocket at this time. Accordingly, Felder's motion to suppress must be denied according to *Glover's* guidance.

Reddick then saw Felder discard something near the center console of the Vehicle as they struggled over control of the Vehicle, making it completely reasonable for Officer Reddick to believe that Felder discarded additional controlled substances during this time and providing an evidentiary basis for a search of the Vehicle incident to Felder's arrest for possession of a controlled substance. *See United States v. Frazier*, 739 F. App'x 180, 181 (3d Cir. 2018) (finding that where officers observed defendant engage in drug transactions and place a weapon under the hood of his vehicle, subsequent warrantless search of the vehicle "was also incident to [defendant]'s arrest because the officers reasonably believed the car contained evidence of a drug-trafficking or firearm offense").

Moreover, once Officer Reddick observed bricks of heroin in Felder's pocket in the Vehicle, he had probable cause to search any part of the Vehicle which might hold additional controlled substances pursuant to *United States v. Ross*, 456 U.S. 798 (1982). In *Ross*, the Supreme Court held that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 825. "Probable cause exists where the circumstances establish a fair probability that contraband or evidence of a crime will be found" in the vehicle. *United States v. Byrd*, 813 F. App'x 57, 61 (3d Cir. 2020) (internal quotation marks and citation omitted). This exception to the warrant requirement for searches of a vehicle is often applicable in drug possession cases. *See United States v. Andrew*, 417 F. App'x 158, 163 (3d Cir. 2011) ("In this case, the search of [defendant]'s car is constitutional under the automobile exception. As [defendant] was exiting his car, one of the officers observed a plastic bag in the car containing a leafy green substance. Upon viewing the plastic bag containing that substance, the officer had probable cause to search for marijuana."); *Frazier*, 739 F. App'x at 181 ("Because the officers developed probable cause to believe contraband was in [defendant]'s car, the automobile exception to the Fourth Amendment

7

applies."). After Officer Reddick observed bricks of heroin on Felder's person and Felder tried to flee from Officer Reddick, the circumstances established a fair probability that additional controlled substances would be in the Vehicle. *See Gant,* 556 U.S. at 347 ("If there is probable cause to believe a vehicle contains evidence of criminal activity, [officers may search] any area of the vehicle in which the evidence might be found."); *see also United States v. Laville*, 48 V.I. 1012, 1022 (3d Cir. 2007) (*quoting United States v. Sharpe*, 470 U.S. 675, 705, (1985) (Brennan, J., dissenting) ("It is 'well established that where police officers reasonably suspect that an individual may be engaged in criminal activity, and the individual deliberately takes flight when the officers attempt to stop and question him, the officers generally no longer have mere reasonable suspicion, but probable cause to arrest.'"). As additional bricks of heroin could have been found in virtually any part of the Vehicle, Officer Reddick's search and subsequent recovery of the Weapon and ammunition were lawful.

Felder's challenges to the validity of Officer Reddick's search are unavailing. First, Felder argues that the plain view exception does not apply here because "[t]here was no attempt by law enforcement to view the passenger compartment of the stopped vehicle from the exterior. . . Officer Reddick entered the vehicle he knew did not belong to the Defendant and began a search. . . . . Officer Reddick was not lawfully in the area from which he made the observation and could not have detected the handgun contained within a closed center compartment from outside the vehicle." ECF No. 10-2 at 5. This argument is misplaced, as the Government does not contend that the plain view exception applies to Officer Reddick's search. As such, given there is no dispute over whether plain view exception should be applied to the search of the Vehicle, this exception is not pertinent to the outcome of the motion to suppress the Weapon. Officer Reddick properly approached the Vehicle, which was on a public street and illegally

8

parked with tinted windows, viewed the heroin in Felder's pocket, asked him to exit the Vehicle, and then subdued Felder after his attempt to flee. At this point, Officer Reddick had probable cause to search the Vehicle and therefore suppression of the Weapon is unwarranted irrespective of the plain view exception.

Next, Felder argues that the automobile exception does not apply to Officer Reddick's search of the Vehicle because "[e]ven indulging in the fiction that Officer Reddick aptly identified pieces of paper in a sweatshirt pocket as bricks of heroin, there is no suggestion that additional controlled substances would be found in Shanda Jackson's vehicle. Certainly, Officer Reddick's justification for 'frisking' the center console - that 'Felder may have discarded more CDS or possible a weapon' -- is rank speculation, not at all based on the facts and circumstances of the arrest." ECF No. 10-2 at 7. Nevertheless, as described in the the factual recitation of the police report, Officer Reddick saw bricks of Heroin in Felder's pocket and saw Felder dispose of something near the center console of the front seat of the Vehicle while Felder was trying to flee from Officer Reddick and Officer Reddick was trying to take control of the Vehicle. ECF No. 10-1 at 4. Officer Reddick's justification for searching the Vehicle was accordingly not based upon "rank speculation," but rather upon his personal observation of controlled substances on Felder's person and Felder's attempt to dispose of something in the midst of trying to flee from law enforcement.

Felder's argument that the vehicle exception does not apply here because Felder was secured and handcuffed when Officer Reddick searched the Vehicle fares no better. ECF No. 10-2 at 7. The vehicle exception is applicable *either* when the defendant is unsecured and within reaching distance of the compartment *or* when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle. *Gant*, 556 U.S. at 338, *see also United States v.*

9

*Nasir*, No. 18-2888, 2020 WL 7041357, at *4 (3d Cir. Dec. 1, 2020) (internal quotation marks and citation omitted) ("Even when . . . an arrestee is detained and not within reach of his vehicle, the police may conduct a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."). Here, despite the fact that Felder had been secured and handcuffed, the vehicle exception is applicable under the facts herein because Officer Reddick had a reasonable belief that additional heroin might be in the console area as he saw Felder drop something while they wrestled over control of the Vehicle.

For the reasons stated above, Felder's motion to suppress evidence obtained via Officer Reddick's search of the Vehicle must be denied. Officer Reddick lawfully approached Felder in an illegally parked vehicle on a public street, viewed a controlled substance in Felder's pocket, stopped Felder from fleeing from arrest, and viewed Felder attempt to dispose of something during their struggle. Officer Reddick thus had numerous independent and adequate bases to search the Vehicle. Accordingly, the fruits of that search are admissible in this matter as the government has shown by a preponderance of the evidence that a warrant was not required to search the Vehicle under the factual circumstances present here.

### III. MOTION TO PRODUCE

Felder also made several requests for production, such as requests that the Government: (1) produce grand jury testimony; (2) produce any exculpatory evidence under *Brady* and its progeny; (3) produce any information favorable to the defense from the personnel files of all law enforcement officers expected to testify in accordance with *United States v. Henthorn*, 931 F.2d 29, 9th Cir. 1991); (4) produce material under the Jencks Act (18 U.S.C. § 3500) at least thirty days before trial; (5) preserve rough notes of interviews; (6) produce *Giglio* material immediately or at least thirty days before trial; (7) make available all marked trial exhibits thirty days before

trial; (8) identify any expert testimony that the Government intends to offer at trial; (9) identify any evidence of other crimes, wrongs, or acts committed by Felder the Government intends to present at trial under Federal Rule of Evidence 404(b); and (10) identify audio and video recordings the Government intends to use at trial and produce any transcripts or translations of recordings at least thirty days before trial. ECF No. 10-2 at 8-13. The majority of these requests are premature. The Government represents that it is well aware of its various disclosure and preservation obligations, and further represents that it has and will promptly abide by these various requirements as they become due. ECF No. 11 at 7–9 (noting that the Government is aware of, and will abide by, its obligations with respect *Brady*, *Giglio*, the Jencks Act, exhibit lists, audio/video recordings, expert disclosures, and Rule 404(b) evidence). Felder does not contend that the Government has failed to abide by its various disclosure or preservation obligations. Accordingly, Felder's motion is denied as premature at this time. Felder may renew these motions to the extent he contends in the future that the Government has failed to abide by its discovery and disclosure obligations.

Separately, Felder's request for grand jury testimony is denied as he has not made the requisite showing to obtain such materials. Grand jury proceedings are presumptively entitled to secrecy, and to obtain disclosure of grand jury materials "a party must show a particularized need for that information which outweighs the public interest in secrecy. *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989). No such showing has been made here. Felder conclusorily states that he "ought to have access to the grand jury testimony to determine whether it constitutes evidence helpful to the defense" and states that the grand jury indictment was "likely as a result of testimony by Newark Police officers." ECF No. 10-2 at 7. These statements are not "particularized" and are insufficient to justify disclosure of grand jury materials. Accordingly,

Felder has not shown a "compelling necessity" to break the secrecy of grand jury proceedings. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958).

Finally, Felder seeks leave to file additional motions as they become appropriate. ECF No. 10-2 at 13. The Government does not oppose this request to the extent the motions are based on information unknown prior to the previous pre-trial motion deadline. ECF No. 11 at 9. The Court will consider the propriety of any additional motions as they are filed, and Felder is granted leave to file additional motions as needed.

## IV. CONCLUSION

For the aforementioned reasons, the Court hereby denies Felder's motion to the extent he seeks to suppress evidence and compel early production of materials by the Government. Felder's motion is granted only to the extent he seeks leave to file additional pre-trial motions. An appropriate Order follows this Opinion.

**DATE**: May 21, 2021.

_____
**CLAIRE C. CECCHI, U.S.D.J.**